UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WILLIAMSBURG CLIMBING GYM COMPANY LLC and FIFTH CONCERTO HOLDCO, INC., | : : : | |
| *Plaintiffs*. | : : | 1:20-CV-2073 |
| -against- | : : | **COMPLAINT** |
| RONIT REALTY LLC, | : : : | |
| *Defendant*. | : : | |

Plaintiffs, Williamsburg Climbing Gym Company LLC ("Williamsburg") and Fifth Concerto Holdco, Inc. ("Fifth Concerto"), by and through their undersigned attorneys, Cullen and Dykman LLP, as and for its Complaint against Defendant Ronit Realty LLC ("Landlord" or "Defendant"), respectfully allege as follows:

## SUMMARY OF CLAIMS

This is a suit for a declaratory judgment against Defendant Ronit Realty LLC seeking a declaration that as a result of the COVID-19 pandemic and Governor Andrew Cuomo's Executive Orders resulting in the mandatory closure of all gyms in the State of New York and the stoppage of all non-essential construction, the purpose of the lease with Landlord was frustrated and Williamsburg lawfully terminated its lease with Defendant effective May 1, 2020. Alternatively, Williamsburg seeks rescission of the lease based on impossibility of performance.

## THE PARTIES

1. At all times relevant hereto, Williamsburg was and is a Delaware limited liability company.

1

2. Williamsburg was established for the purpose of owning and operating a specialized climbing facility, exercise studio, café and co-working space, and ancillary purposes associated therewith, and nothing else, in the Williamsburg section of Brooklyn, New York.

3. Fifth Concerto is a Delaware corporation with its principal place of business in Denver, Colorado, and is the sole member of Williamsburg.

4. Upon information and belief, at all times relevant hereto, Landlord was and is a New York limited liability company.

5. Upon information and belief, the members of Landlord are citizens of the State of New York, with one member residing in Kings County and the other residing in New York County.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) as all parties to this action are citizens or business entities of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. This Court is the proper venue for the adjudication of the causes of action asserted in this litigation pursuant to 28 U.S.C. § 1391(b)(2).

## COMMERCIAL LEASE

8. On or about November 30, 2018, with an effective date of November 1, 2018, Williamsburg entered into a commercial lease with the Landlord for property located at 58 North 9th Street, Brooklyn, New York (hereinafter referred to as the "Lease").

9. Fifth Concerto signed a written guaranty ("Guaranty") with the Landlord wherein it guaranteed Williamsburg's obligations under the Lease.

10. Pursuant to the Lease, the leased premises consisted of approximately 30,598 square feet of indoor space located on three adjacent floors, along with approximately 3,108 square

feet of outdoor terrace space (hereinafter "Leased Premises"), the third floor having a unique unobstructed skyline view of Manhattan.

11. The Lease commenced on or about November 1, 2018 and expires on October 31, 2028 unless terminated earlier.

12. Base Rent for the first year of the Lease term was $1,957,500.00, with monthly rental payments of $163,125.00.

13. The Landlord first tendered delivery of the Leased Premises on or about June 20, 2019. At that time there were three known issues: (1) water in the basement, (2) electrical service being incomplete, and (3) the elevator stopped approximately six inches short from the third floor of the Leased Premises. The elevator was necessary for use by the general contractor during construction as well as to make the Leased Premises ADA compliant. Williamsburg reluctantly accepted delivery of the Leased Premises when the water issue was resolved, and the Landlord represented that the elevator and electrical issues would be corrected. Despite agreeing to immediately rectify these issues, the elevator was not corrected until March 19, 2020, when the elevator received its certificate of use; however, the electrical has yet to be corrected. Further, during construction, it was revealed that the mezzanine that the Landlord designed and installed to hold Williamsburg's water heaters was not constructed to the specification. All of these issues have made construction of the Williamsburg facility extremely difficult.

14. Shortly after delivery of the Leased Premises, Williamsburg finalized its design plans, retained its general contractor, obtained its permits, and began its buildout in or about September 2019.

15. The facility design and business model were being constructed to be significantly different from a traditional rock-climbing gym. In a traditional rock-climbing gym, the majority

of recreational activity occurs in an unstructured environment such that participants, after an initial orientation, are able to rock climb or utilize exercise equipment independently without the guidance of an instructor. There are no individual areas where groups must confine themselves for exercise.

16. In contrast, the Williamsburg facility is based on a model developed within the boutique studio niche of the fitness industry whereby group fitness studio style rooms are filled with customers, each assigned to an exercise station and classes are led by a live instructor. This model not only presumes the ability to convene classes where people are densely packed but also that this tight co-mingling with like-minded individuals is in-fact a significant part of the appeal. In a Nielsen poll of group fitness participants, the energy of a large group was listed as the top driver for participants.

17. The Williamsburg facility was designed with 4 studios, each with a specialized theme and purpose and each built for a large group of individuals who exercise together while being led by instructors specifically trained to execute classes within each studio theme. The studio themes are: calisthenic movement, Olympic weightlifting, rock climbing inspired fitness, and general athletic training.

18. Pursuant to Section 62(b) of the Lease entitled "Use and Operation of the Demised Premises":

> [Williamsburg] shall operate its business in the Demised Premises during the Term and occupy the Demised Premises primarily as an indoor climbing facility, and may also use the Demised Premises for other uses incidental to the primary use, such as for a fitness center or studios, a juice bar, a café, lounge, restaurant or bar (including the sale of alcohol and food), lounges, general office space in connection with the conduct of [Williamsburg's] business or for co-working, event space (e.g., birthday parties), for the retail sale of merchandise related to [Williamsburg's] primary use and for

>    collaborative office space, *and for no other use or purpose whatsoever (the "Permitted Uses"), and for no other purpose*, except as otherwise expressly permitted in accordance with, and subject to, the provisions hereof. (emphasis added)

19.   As designs for the Leased Premises progressed, the studio elements of the permitted uses were highlighted because of the unique location of the Leased Premises. The designs were discussed with and approved by the Landlord.

20.   Pursuant to the terms of the Lease, Williamsburg was required to obtain Landlord's approval of the plans. Williamsburg was not permitted to construct the Leased Premises in a manner not approved by Landlord.

## FRUSTRATION OF PURPOSE AND IMPOSSIBILITY

21.   As Williamsburg's general contractor was in the process of constructing the Leased Premises, on March 7, 2020, Governor Cuomo issued Executive Order No. 202 declaring a disaster emergency for the entire State of New York due to the COVID-19 outbreak.

22.   As construction continued into the third week of March 2020, the COVID-19 pandemic was rapidly spreading throughout New York City and the State of New York, with thousands of people becoming infected with COVID-19.

23.   Through May 3, 2020, some 327,015 New York residents have tested positive for COVID-19 and 25,113 residents have died from the coronavirus.

24.   As a result of the COVID-19 pandemic, Governor Cuomo issued a number of Executive Orders, which by March 29, 2020, completely frustrated the very purpose of the Lease and made it impossible for Williamsburg to perform.

25.   Pursuant to Executive Order No. 202.3, all gyms and fitness centers were ordered to "cease operation effective at 8 pm on March 16, 2020."

26. Pursuant to Executive Order No. 202.13, dated March 29, 2020, all non-essential construction, which included construction at the Leased Premises, was ordered to cease.

27. As a result of the Executive Orders, on May 1, 2020, Williamsburg informed the Landlord that it considers the Lease terminated by the legal doctrine of frustration of purpose. On May 1, 2020, during a conference call between the parties and Defendant's counsel, Williamsburg informed Defendant and its counsel that in view of the ongoing pandemic and Governor Cuomo's Executive Orders shutting down all non-essential construction and gyms, Williamsburg was terminating the lease effective May 1, 2020 pursuant to the legal doctrine of frustration of purpose. In response, Defendant's attorney said that the termination was rejected, and they will "see us in court."

28. Pursuant to Paragraph 73 of the Lease, on May 5, 2020 Williamsburg gave Landlord written notice that Williamsburg terminated the Lease effective May 1, 2020 due to the doctrines of frustration of purpose and impossibility of performance.

**SUPPLEMENTAL BASIS FOR FRUSTRATION OF PURPOSE AND IMPOSSIBILITY**

29. During Lease negotiations, Landlord was aware that Williamsburg's specialized business model was dependent on a minimum occupancy at the Leased Premises for Williamsburg's studio-based programming to be viable.

30. According to the International Health, Racquet and Sportsclub Association ("IHRSA"), group fitness studios should offer a minimum of 40 sq. ft. per participant to enable safe exercise. IHRSA's recommended range is 40-60 sq. ft. per participant.

31. The Pro-Forma for Williamsburg's 4 studios reflects these assumptions when determining studio capacity and therefore membership capacity.

32. The Centers for Disease Control and Prevention's current social distancing recommendation of a minimum 6ft radius, or 113 sq. ft., significantly reduces Williamsburg's projected studio operating capacity, the key determinant of ultimate membership capacity.

33. With Williamsburg's expected capacity reduced because of COVID-19, Williamsburg's Pro-Forma model is substantially frustrated and renders performance by Williamsburg impossible.

34. As a result of the Executive Orders, it is understood that when gyms are permitted to reopen, social distancing and other preventative measures to lower the occupancy rate of participants will need to be incorporated as a condition to any reopening.

35. Neither Williamsburg nor Landlord could have foreseen such a concept at the time the Lease was executed.

36. Williamsburg's specialized business plan is completely destroyed under the anticipated continued governmental requirement of social distancing and other requirements.

37. Social distancing rules and guidelines currently in place, and that will be in effect if and when gyms are permitted to re-open, are the direct result of the COVID-19 pandemic and are a further frustration of purpose of the Lease.

## COUNT I
### (Declaratory Judgment of Frustration of Purpose)

38. Williamsburg repeats and realleges each and every allegation contained in paragraphs 1 through 37 of this complaint with the same force and effect as if they had been fully set forth herein at length.

39. An actual controversy of a justiciable nature now exists between Williamsburg and Landlord concerning the rights and obligations of the parties under the Lease.

40. Specifically, the parties disagree on whether Williamsburg is entitled to lawfully terminate the Lease and whether Williamsburg and Fifth Concerto are relieved of their Lease and Guaranty obligations pursuant to the doctrine of frustration of purpose.

41. Under New York law, frustration of purpose refers to a situation where an unforeseen event has occurred which, in the context of the entire transaction, destroys the underlying reasons for performing such contract, thus operating to discharge a party's duties of performance.

42. As a result of COVID-19 and Governor Cuomo's Executive Orders, Williamsburg is prohibited from continuing construction at the Leased Premises and from operating its business at the Leased Premises as a specialized facility and all other Permitted Uses set forth in Paragraph 62(b) of the Lease.

43. COVID-19 and the effects thereof, including Williamsburg's inability to undertake construction and operate a specialized business at the Leased Premises was completely outside of Williamsburg's control and was not foreseeable or anticipated at the time the Lease was entered into with the Landlord.

44. Williamsburg and Fifth Concerto have a legally protectable interest in this controversy. Specifically, Williamsburg and Fifth Concerto have a pecuniary interest in a declaration that they have no obligation to continue to pay rent to the Landlord commencing on May 1, 2020. To date, Williamsburg has paid Landlord $1,256,178.00 in rent, along with a security deposit of $400,000.00.

45. Therefore, Williamsburg and Fifth Concerto respectfully seek a declaratory judgment of their rights under the doctrine of frustration of purpose.

46. Williamsburg seeks a declaration from this Court that Williamsburg lawfully terminated the Lease as a result of the COVID-19 pandemic and the Executive Orders which prohibit Williamsburg from operating its business at the Leased Premises.

47. The purpose of the Lease has been completely frustrated.

48. Fifth Concerto seeks a declaration that since the Lease lawfully terminated, its obligations to guaranty the Lease are extinguished.

49. Williamsburg further seeks an order of this Court declaring that Landlord is liable for the attorneys' fees and costs incurred by Williamsburg in the prosecution of this lawsuit pursuant to the term of the Lease.

50. This controversy is ripe for adjudication and a judicial declaration is necessary to end the present controversy.

51. There has been no prior request for the relief sought in this cause of action.

## COUNT II
### (Rescission Based on Impossibility of Performance)

52. Williamsburg repeats and realleges each and every allegation contained in paragraphs 1 through 51 of this complaint with the same force and effect as if they had been fully set forth herein at length.

53. The Lease permits Williamsburg to use the Leased Premises and operate its business in a particular manner.

54. The law of impossibility provides that performance of a contract will be excused if such performance is rendered impossible by intervening governmental activities.

55. Because of COVID-19 and the Executive Order No. 202.3 and Executive Order 202.13, performance by Williamsburg and Landlord to the Lease has been rendered impossible.

56. The impossibility occasioned by COVID-19 and the Executive Orders was unforeseen at the time the Lease was entered into and cannot be attributed to Williamsburg or Landlord.

57. Alternatively, Williamsburg has no adequate remedy at law and its ground for relief herein, i.e., rescission, is addressed to the equitable jurisdiction of this Court.

**WHEREFORE,** Williamsburg and Fifth Concerto demand judgment against Defendant as follows:

1. On the first cause of action, Plaintiffs pray for a judgment declaring that:

    (a) Williamsburg lawfully terminated the Lease and that the Lease is hereby terminated and of no further force and effect, pursuant to the doctrine of frustration of purpose;

    (b) Since the purpose of the Lease has been frustrated and therefore terminated that Fifth Concerto's obligations under the Guaranty are extinguished; and

    (c) Williamsburg is entitled to receive from Landlord the full amount of its security deposit because the Lease has been lawfully terminated.

2. Alternatively, on the second cause of action, a judgment of this Court acting as a court of equity rescinding the Lease, and all obligations of the parties under the Lease, and therefore Fifth Concerto's obligations under the Guaranty, and ordering Defendant to return the full amount of the security deposit to Williamsburg.

3. An award of attorneys' fees and costs incurred by Williamsburg in the prosecution of this lawsuit.

4. Such other and further relief as this Court deems just, proper, and equitable.

Dated: New York, New York
　　　 May 6, 2020

　　　　　　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　CULLEN AND DYKMAN LLP

　　　　　　　　　　　　　　　　　　　　By:　  /s/ Richard A. Coppola
　　　　　　　　　　　　　　　　　　　　　　 Richard A. Coppola
　　　　　　　　　　　　　　　　　　　　　　 RC7466
　　　　　　　　　　　　　　　　　　　　　　 44 Wall Street. 17th Floor
　　　　　　　　　　　　　　　　　　　　　　 New York, New York 10005
　　　　　　　　　　　　　　　　　　　　　　 Phone: (212) 510-2250
　　　　　　　　　　　　　　　　　　　　　　 rcoppola@cullenllp.com

　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs Williamsburg
　　　　　　　　　　　　　　　　　　　　Climbing Gym Company LLC and Fifth
　　　　　　　　　　　　　　　　　　　　Concerto Holdco, Inc.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAMSBURG CLIMBING GYM COMPANY LLC, FIFTH CONCERTO HOLDCO, INC., <br><br> *Plaintiffs* <br><br> -against- <br><br> RONIT REALTY LLC, <br><br> *Defendant.* | 1:20 CV 2073 |

## DECLARATION OF MARK B. SEIGER IN SUPPORT OF PLAINTIFFS' COMPLAINT

1. I am an attorney licensed to practice law in the State of Connecticut and the United States District Court for the District of Connecticut. I am Vice President Legal, General Counsel and Corporate Secretary of Plaintiffs. I make this declaration from my personal knowledge and, if called upon to do so, could and would competently testify as to the truth of the matters set forth in the accompanying complaint.

2. I declare under penalty of perjury that the foregoing statements and allegations in the accompanying Complaint are true and correct.

Executed on May 6, 2020 in West Hartford, Connecticut.

Mark B. Seiger