UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X
WILLIAMSBURG CLIMBING GYM
COMPANY LLC and FIFTH CONCERTO
HOLDCO, INC.,

                        Plaintiffs,

-against-

RONIT REALTY LLC,

                        Defendant.
---------------------------------------------------X

REPORT AND
RECOMMENDATION
20 CV 2073 (FB)(RML)

LEVY, United States Magistrate Judge:

By order dated January 14, 2022, the Honorable Frederic Block, United States District Judge, granted defendant's motion for summary judgment and referred the calculation of damages to me for report and recommendation. For the reasons stated below, I respectfully recommend that defendant be awarded $7,283,427.25, plus prejudgment interest.

**BACKGROUND AND FACTS**

Familiarity with the underlying facts and proceedings is assumed. Briefly, plaintiffs Williamsburg Climbing Gym Company and Fifth Concerto Holdco, Inc. (together, "Brooklyn Boulders") commenced this action in May 2020, seeking a declaratory judgment and recission of a ten-year lease (the "Lease") with defendant Ronit Realty LLC ("Ronit"). (Complaint, dated May 6, 2020, Dkt. No. 1.) On June 24, 2020, Ronit filed its answer with a counterclaim for breach of the Lease and guaranty agreement, which it subsequently amended on July 23, 2020. (Answer, dated June 24, 2020, Dkt. No. 11; Amended Counterclaim, dated July 23, 2020, Dkt. No. 16.) On April 16, 2021, the parties moved for summary judgment on their respective claims. (Motions for Summary Judgment, dated Apr. 16, 2021, Dkt. Nos. 26, 30.) On January 5, 2022, Judge Block denied Brooklyn Boulders' motion for summary judgment, granted

Ronit's motion for summary judgment, and referred the determination of damages to me. (Memorandum and Order, dated Jan. 5, 2022 ("Memorandum & Order"), Dkt. No. 68.)

On July 11, 2022, Brooklyn Boulders notified the court that it was insolvent and requested that I recommend that a default judgment be entered against it. (Letter of Michael J. Lane, Esq., dated July 11, 2022, Dkt. No. 73.) Following a conference with the parties on August 2, 2022, I noted Brooklyn Boulders' default with respect to the adjudication of Ronit's damages and ordered Ronit to file a damages submission. Ronit filed its damages submission on September 16, 2022. (See Counterclaim-Plaintiff Ronit Realty LLC's Proposed Findings of Fact and Conclusions of Law, dated Sept. 16, 2022 ("Damages Submission"), Dkt. No. 75.)

## DISCUSSION

Once liability has been established, as Brooklyn Boulders' was here, "the court is required to make an independent determination of the sum to be awarded." Griffiths v. Francillon, No. 10 CV 3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotation marks omitted). It is not necessary for this court to hold an evidentiary hearing on damages when there is an otherwise adequate basis for the award. See U.S. Bank Trust, N.A. v. Dingman, No. 16 CV 1384, 2016 WL 6902480, at *4 n.8 (S.D.N.Y. Nov. 22, 2016). Detailed affidavits and other documentary evidence can afford a sufficient basis to compute damages. See, e.g., Onewest Bank, N.A. v. Cole, No. 14 CV 3078, 2015 WL 4429014, at *3 (E.D.N.Y. July 17, 2015); E. Sav. Bank, FSB v. Beach, No. 13 CV 341, 2014 WL 923151, at *9 (E.D.N.Y. Mar. 10, 2014); Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

Ronit seeks $7,441,123.75 in damages, plus prejudgment interest. (Damages Submission at 18.) This amount consists of (1) $5,361,886 in unpaid rent; (2) $1,214,116.76 in

construction contributions; (3) $528,907.11 in real estate taxes; (4) $137,500 for settlement of mechanic's liens; and (5) $198,714.38 in attorney's fees and costs. (Id. at 18; Supplemental Declaration of Jay Weitzman, dated Sept. 16, 2022 ("Weitzman Decl."), Dkt. No. 75-1.) Under the terms of the Lease, Ronit is entitled to each of these categories of damages. (See Lease, attached as Ex. D to Ronit Motion for Summary Judgment ("Ronit Mot. for Summ. J."), Dkt. No. 26-5; First Amendment to Lease, attached as Ex. G to Ronit Mot. for Summ. J., Dkt. No. 26-8; Addendum to Lease, attached as Ex. H to Ronit Mot. for Summ. J., Dkt. No. 28-9.) I will address each in turn.

1. Unpaid Rent

Ronit seeks $5,361,886 in unpaid rent, consisting of $4,887,947.37 in base rent, $218,610.64 in deferred rental payments, and $255,327.99 in late fees. (Damages Submission at 13.) As alleged in the Damages Submission and the Declaration of Ronit's member Jay Weitzman, Brooklyn Boulders has not made any payments toward the unpaid rent. (Damages Submission at 13; Weitzman Decl. ¶ 7.)

Brooklyn Boulders was obligated to pay a monthly base rent of $168,630.80 in May and June of 2020, an amount that increased annually on July 1st by 2.85 percent. (See Lease § 41; Damages Submission at 13.) In addition, Brooklyn Boulders was required to pay $27,326.33 each month in deferred rent from May 2020 to December 2020, pursuant to the Lease Addendum. (See Lease Addendum; Damages Submission at 12.) Finally, Brooklyn Boulders is liable for late fees in the amount of five percent of the underlying payment, pursuant to the terms of the Lease. (See Lease §§ 48(a), 53.04; Damages Submission at 13.)

Having reviewed the submitted documents, I find that the records support and are consistent with the calculations in Ronit's submissions. I therefore respectfully recommend that Ronit be awarded $5,361,886.00 in unpaid rent.

2. Construction Contributions

Ronit also seeks $1,214,116.76 for construction contributions. (Damages Submission at 13.) Pursuant to the Lease, Ronit agreed to contribute up to $2,775,000 to Brooklyn Boulders' buildout as contractual incentive to enter into and perform under the Lease. (Weitzman Decl. ¶ 15; Lease § 54.02(b).) Prior to Brooklyn Boulders' default under the Lease on May 1, 2020, Ronit contributed $468,949.64 on December 19, 2019, and $745,167.12 on March 27, 2020, towards construction. (Weitzman Decl. ¶ 16.) Because Brooklyn Boulders breached the Lease, Ronit never saw the benefit of its contributions and contends that it is entitled to reimbursement of these amounts. (Id.; Damages Submission at 13.) My review of the Lease and the table set out in the Weitzman Declaration confirms the amount requested by Ronit. Therefore, I respectfully recommend that Ronit be awarded a total of $1,214,116.76 for construction contributions.

3. Property Taxes

Ronit seeks $528,907.11 for property taxes owed by Brooklyn Boulders. (Damages Submission at 14.) The Lease provides that Brooklyn Boulders was responsible for all real estate taxes accruing on the leased property for the entire duration of the Lease. (Lease § 47.02; Weitzman Decl. ¶ 17.) Ronit submitted a statement from the New York City Department of Finance documenting Ronit's property tax payments of $143,688.39 on June 7, 2020; $147,533.20 on December 24, 2020; $118,168.70 on August 10, 2021; and $119,516.82 on December 14, 2021. (See Department of Finance Statement ("NYCDOF Statement"), attached

as Ex. 1 to Weitzman Decl., Dkt. No. 75-2; Weitzman Decl. ¶ 19.)  Ronit asserts that Brooklyn Boulders failed to pay real estate taxes or otherwise reimburse Ronit for its payment of property taxes.  (Weitzman Decl. ¶ 18.)  I have reviewed the NYCDOF Statement and find that it supports the amount requested by Ronit.  Thus, I respectfully recommend that Ronit be awarded $528,907.11 for property taxes owed by Brooklyn Boulders.

    4. Settlement of Mechanic's Liens

Ronit seeks $137,500 for the settlement of the mechanic's liens filed against Brooklyn Boulders.  (Damages Submission at 14.)  The terms of the Lease required Brooklyn Boulders to discharge any mechanic's liens within thirty days of their filing, and if Brooklyn Boulders failed to do so, Ronit was entitled to discharge the liens on Brooklyn Boulders' behalf and be promptly reimbursed by Brooklyn Boulders.  (Lease §§ 43.06, 66; see Weitzman Decl. ¶¶ 20-22.)  In support of this claim, Ronit submitted a copy of the Settlement Agreement documenting its payment to discharge the primary lien filed against Brooklyn Boulders.  (See Settlement Agreement, attached as Ex. 2 to Weitzman Decl., Dkt. No. 75-3.)  Ronit noted that some of the remaining mechanic's liens are still being litigated, but it "seeks reimbursement only of the $137,500 it paid to discharge the primary, $1.6 million lien filed against the Premises by Brooklyn Builders' general contractor."  (Weitzman Decl. ¶ 23.)  The Settlement Agreement and attached exhibits demonstrate that Ronit paid the stated amount to discharge the mechanic's lien.  I therefore respectfully recommend that Ronit be awarded $137,500 for discharge of the mechanic's liens.

    5. Prejudgment Interest

Ronit seeks prejudgment interest on the unpaid rent, construction contributions, and real estate taxes.  (Damages Submission at 17, 18.)  The rate of interest is calculated at nine

percent per annum, "computed from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. §§ 5004, 5001(b); see Fleisher v. Phoenix Life Ins. Co., 997 F. Supp. 2d 230, 241 ("Under New York law, any 'sum awarded' in a breach of contract action accrues interest at 9%—the statutory prejudgment interest rate.") In cases of breach of contract and breach of guaranty, as is the case here, "prejudgment interest begins to accrue from the date of the guarantor's default." 56 Willoughby A LLC v. Zhang, No. 20 CV 3973, 2021 WL 3622084, at *11 (E.D.N.Y. July 27, 2021); see also Wechsler v. Hunt Health Systems, Ltd., 330 F. Supp. 2d 383, 436 (S.D.N.Y. 2004) (finding prejudgment interest began to accrue at the initial breach despite damages being incurred at various times). Accordingly, I find May 1, 2020, the date Brooklyn Boulders informed Ronit that it was terminating the Lease, to be an appropriate date from which to begin computing prejudgment interest. (See Memorandum & Order at 3.) Accordingly, I respectfully recommend that Ronit be awarded prejudgment interest at the rate of nine percent per annum from May 1, 2020 through the date of entry of judgment.[1]

6. Attorney's Fees

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 550 (2010) (citing Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)). However, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees." McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir. 1993); see also Red Tree Invs., LLC v. Petroleos de Venezuela, S.A., No. 19 CV 2519, 2022 WL 17834945, at *2 (S.D.N.Y. Nov. 29, 2022) ("[T]he rule in New York is that when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the

---

[1] This leads to a per diem interest rate of $1,751.89 ($7,104,909.87 x 0.09/365).

6

court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable.") (quoting Diamond D Enters. USA, Inc. v. Steinsvaag, 979 F.2d 14, 19 (2d Cir. 1992)).  Here, section 48 of the Lease states that Brooklyn Boulders agrees to pay all reasonable costs and expenses, including attorney's fees and disbursements, incurred in enforcing the terms of the Lease or collecting sums due.  (See Lease § 48.)  Accordingly, Ronit is entitled to recover reasonable attorney's fees and costs.

Ronit seeks a total of $196,001.50 in attorney's fees based on 525.7 hours of work.  (Declaration of Adam J. Stein, Esq., dated Sept. 16, 2022 ("Stein Decl."), Dkt. No. 75-4.)  Courts in this circuit exercise their discretion to determine the reasonableness of attorney's fees using the "presumptively reasonable fee" standard.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 183, 190 (2d Cir. 2008).  The presumptively reasonable fee is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

As a threshold matter, the party seeking fees must provide accurate, detailed and contemporaneous attorney time records.  See Scott v. City of New York, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam); N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  Ronit has satisfied this requirement, with the exception discussed below. (See Billing Records ("Billing Records"), attached as Ex. A to Stein Decl., Dkt. No. 75-5.)

The court next assesses whether counsel requests a reasonable hourly rate. Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  Arbor Hill, 522 F.3d at 190.  Reasonable hourly rates should be based on "rates prevailing in the community for similar

7

services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted).  A judge may determine prevailing rates based on evidence presented, knowledge of rates charged in the community, and "the nature of representation and type of work involved in a case." Arbor Hill, 522 F.3d at 184 n.2; see also Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1059 (2d Cir. 1989).

Ronit requests average hourly rates of $461.67 for Adam J. Stein, $433.33 for Matteo Rosselli, $450 for Casey Hail, $345 for Jacob Lewin, $345 for Samuel Bazian, and $385 for Noelle Harvey.[2]  (Stein Decl. ¶ 13.)  In this district, hourly rates "generally range from $300.00 to $450.00 for partner-level attorneys, and $200.00 to $325.00 for those with less experience." Perrone v. Amato, No. 09 CV 316, 2022 WL 595187, at *3 (E.D.N.Y. Feb. 27, 2022); see also Interpool, Inc. v. JJS Transp. & Distrib. Co., No. 22 CV 1103, 2022 WL 17335670, at *4 (E.D.N.Y. Nov. 30, 2022).  In cases where higher rates have been approved, the parties applying for fees have supported the hourly rate claimed with evidence such as counsel's extensive expertise, experience before the federal bar, and specialization required to litigate the matter.  See, e.g., Saleh v. Pretty Girl, Inc., No. 09 CV 1769, 2022 WL 4078150, at *32 (E.D.N.Y. Sept. 6, 2022) (finding $500 to be a reasonable rate for "a highly experienced civil rights attorney who has been practicing law since 1986, and has been engaged in his own legal practice"); U.S. ex rel. Doe v. Acupath Labs., Inc., No. 10 CV 4819, 2015 WL 1293019, at *10

---

[2] The average rates are provided for Adam J. Stein, Matteo Rosselli, Jacob Lewin, and Samuel Bazian, whose rates increased over the course of the litigation.  Mr. Stein's rate was $450 in 2020-2021 and $485 in 2022; Mr. Rosselli's rate was $425 in 2020-2021 and $450 in 2022; Mr. Lewin's rate was $325 in 2020-2021 and $385 in 2022; and Mr. Bazian's rate was $325 in 2020-2021 and $385 in 2022.  The rates of Ms. Hail and Ms. Harvey did not change.

(E.D.N.Y. Mar. 19, 2015) (justifying hourly rates of $500 and $600 because "they reflect[ed] the skill, quality, and experience of the attorney, as well as the degree of specialization required by this case.").

Mr. Stein is a founding partner of Stein Adler with experience in complex commercial litigation and real estate litigation in state and federal courts of New York. (Stein Decl. ¶¶ 4, 5.) Although Mr. Stein is a founding partner with expertise in complex real estate matters, the breach of contract claim here does not justify the rate requested.[3] See U.S. ex rel. Joseph F. Tommasino, P.A., PhD v. Guida, No. 10 CV 4644, 2017 WL 878587, at *5 (E.D.N.Y. Mar. 6, 2017) ("the highest rates in this district rarely exceed $450 per hour, even for the most experienced attorneys in . . . complex commercial cases."). In addition, Mr. Stein "fail[ed] to specify when [he] was admitted to the bar or how many years' experience [he] possesses." Ally Fin. Inc. v. Comfort Auto Grp., No. 21 CV 1281, 2022 WL 3703955, at *18 (E.D.N.Y. Aug. 26, 2022). "Because expertise is a critical factor in evaluating the reasonableness of a billing rate . . . courts have reduced fee awards due to a lack of background information on each attorney who worked on a case." Brito v. ATA Freight Line, Ltd., 20 CV 3132, 2021 WL 7830146, at *10 (E.D.N.Y. Aug. 24, 2021). Accordingly, I find that a reasonable rate for Mr. Stein is $450 per hour.

---

[3] As explained in Judge Block's Memorandum and Order, "the *force majeure* clause and the clauses imposing upon Brooklyn Boulders the duty to comply with government regulations and orders make clear that the parties foresaw the risk of unfavorable changes in governmental regulations, and allocated that risk to Brooklyn Boulders. The parties do not dispute that Brooklyn Boulders failed to pay any sums due under the Lease since May 1, 2020. Therefore, it is in breach of the Lease." (Memorandum & Order at 12.) Because the terms of the Lease clearly establish Brooklyn Boulders' liability as a matter of law, this is a straightforward breach of contract claim, and thus does not justify the higher requested rate.

9

For similar reasons, I find Mr. Rosselli's rates of $425 in 2020 and 2021 and $450 in 2022 to be excessive. Mr. Rosselli has been Of Counsel to Stein Adler since January 2019 and has prior litigation experience in commercial real estate matters. (Stein Decl. ¶ 6.) Again, Ronit has provided no information regarding how many years of experience Mr. Rosselli possesses or when he was admitted to the bar. Courts in this district have found $400 to be an appropriate rate for attorneys with commercial litigation experience in breach of contract cases. See Interpool, 2022 WL 17335670, at *4; but see MMP Cap., Inc. v. Punyakam, PPLC, No. 20 CV 1755, 2022 WL 2161385, at *1 (E.D.N.Y. June 15, 2022) (approving $360 per hour in breach of contract action for practitioner with civil and commercial litigation experience who was admitted to the bar in 1996). Accordingly, I find $400 to be a proper hourly rate for Mr. Rosselli.

Ms. Hail joined Stein Adler in November 2021 as "Counsel." (Stein Decl. ¶ 7.) She graduated from New York University School of Law in 2007 and then "was an associate at Hughes Hubbard & Reed, Storch Amini PC, and Amini LLC, where she specialized in complex commercial litigation and e-discovery practices." (Id.) Although Ronit provides some indication of how long Ms. Hail has been practicing, I also find her hourly rate of $450 to be excessive for "Counsel" in the context of this case. Instead, I find $425 to be a proper hourly rate for Ms. Hail.

Mr. Lewin graduated from Benjamin N. Cardozo School of Law in 2011 and joined Stein Adler as an associate in 2018, focusing on complex commercial, real estate, and construction litigation. (Id. ¶ 8.) Mr. Bazian was an associate at Stein Adler from July 2019 until February 2022, where he focused on complex commercial and real estate litigation. (Id. ¶ 9.) Ms. Harvey joined Stein Adler as a litigation associate in February 2022 and has been admitted in the state courts of New York since January 2020, and the Southern District of New

York since 2022.  (Id. ¶ 10.)  Courts in the Eastern District have recently awarded hourly rates ranging from $100 to $325 for associates.  See, e.g., Perrone, 2022 WL 595187, at *3; Martinez v. New 168 Supermarket LLC, No. 19 CV 4526, 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020), report and recommendation adopted, No. 19 CV 4526, 2020 WL 5259056 (E.D.N.Y. Sept. 3, 2020) (collecting cases).  Accordingly, I find that $325 per hour is a reasonable rate for the associates, Mr. Lewin, Mr. Bazian, and Ms. Harvey.

The court next looks to the reasonableness of the number of hours billed.  To determine the reasonableness of the hours spent on the litigation, the court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended."  Maldonado v. La Nueva Rampa, Inc., No. 10 CV 8195, 2012 WL 1669341, at *13 (S.D.N.Y. May 14, 2012) (quoting Lunday, 42 F.3d at 134).  The "critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  Id. (quoting Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)).  The party seeking attorney's fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable.  Saleh, 2022 WL 4078150, at *34 (citations omitted).

Here, Ronit's counsel seeks compensation for 525.7 hours of work.  (Stein Decl. ¶ 11.)  Of the total, Mr. Stein worked 93.5 hours, Mr. Rosselli worked 75.9 hours, Ms. Hail worked 32.9 hours, Mr. Lewin worked 10.3 hours, Mr. Bazian worked 311.2 hours, and Ms. Harvey worked 1.9 hours.  (Id. ¶ 13.)  The time records submitted support the hours claimed by Ronit's attorneys; however, the Billing Records are almost entirely redacted, with no description of the work performed, and only attorneys' initials, dates, and number of hours left

11

unredacted.[4]  (See Billing Records.)  The Damages Submission and Mr. Stein's Declaration also fail to fill in the gaps of the Billing Records, and instead offer vague and ambiguous descriptions of the work performed.  See Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC, 549 F. Supp. 2d 274, 283-84 (E.D.N.Y. 2008) (explaining that vague descriptions and block billing "make[] it virtually impossible for the Court to identify whether the amount of time spent on a particular task is reasonable.").  "Where billing records are vague, a reduction in fees is also appropriate."  Id. at 282; see also U.S. Football League v. Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989) (reducing total fee award due to vagueness in documentation of certain time entries); ACE Ltd. v. CIGNA Corp., No. 00 CV 9423, 2001 WL 1286247, at *4 (S.D.N.Y. Oct. 22, 2001) ("The court may further reduce the fee request where the fee applicant has failed to provide adequate information"); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 397 (S.D.N.Y. 2000) ("If the time records lack such specificity that the court is unable to determine a proper fee allocation, then [applicants'] fee recovery may be reduced.").

When billing entries are insufficient, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'"  Saleh, 2022 WL 4078150, at *34 (concluding that a fifteen percent across-the-board reduction of hours was appropriate in light of vague entries and other billing deficiencies) (quoting Hensley, 461 U.S. at 434; Carey, 711 F.2d at 1146); see also Matusick v. Erie Cty. Water Auth., 757 F.3d 31, 64 (2d Cir. 2014) (upholding fifty percent across-the-board reduction where district court expressed concerns regarding "unspecified conferences, telephone calls, email correspondence, and reviews."); U.S. Football League, 887 F.2d at 415 (affirming

---

[4]  Counsel's submission contains no explanation for the redactions and has not attempted to show that the time entries were redacted to protect privileged information or attorney work product.

12

thirty percent reduction of hours based on plaintiff's limited success and vagueness in documentation of time entries); Monette v. Cty. of Nassau, No. 11 CV 539, 2016 WL 4145798, at *9 (E.D.N.Y. Aug. 4, 2016) (collecting cases and applying twenty percent across-the-board reduction in counsel's hours due to, *inter alia*, vague and block-billed time entries and billing for clerical or administrative work); Marisol, 111 F. Supp. 2d at 401 (reducing hours by fifteen percent for overstaffing, excessive time spent on discrete tasks, and non-compensable matters.).

Having reviewed Ronit's counsel's heavily redacted billing records, which contain literally no description of any of the work done by the attorneys, I respectfully recommend that counsel's hours be reduced by eighty percent, as follows:

| Attorney | Hourly Rate | Billed # of Hours | Reduced # of Hours | Total |
| --- | --- | --- | --- | --- |
| Adam J. Stein | $450 | 93.5 | 18.7 | $8,415 |
| Matteo Rosselli | $400 | 75.9 | 15.18 | $6,072 |
| Casey Hail | $425 | 32.9 | 6.58 | $2,796.50 |
| Jacob Lewin | $325 | 10.3 | 2.06 | $669.50 |
| Samuel Bazian | $325 | 311.2 | 62.24 | $20,228 |
| Noelle Harvey | $325 | 1.9 | 0.38 | $123.50 |
| Total | | | 95.14 | $38,304.50 |

Accordingly, I respectfully recommend that Ronit be awarded $38,304.50 in attorney's fees.[5]

---

[5] In the alternative, I recommend that Ronit's counsel be given leave to submit unredacted attorney time records for proper judicial review.

7. Costs and Disbursements

Finally, Ronit requests $2,712.88 in costs and disbursements, consisting of $665.47 in filing fees, $252.94 in delivery services, $857.59 in service of process fees, $517 in court docketing services, $300 in mediation costs, and $119.88 in transcript fees. (Stein Decl. ¶¶ 21, 22; see Billing Records.) "Ordinarily, plaintiffs may recover costs relating to filing fees, process servers, postage, and photocopying." Pichardo v. El Mismo Rincon Latino Corp., No. 17 CV 7439, 2018 WL 4101844, at *11 (E.D.N.Y. Aug. 7, 2018) (quotations and citation omitted), report and recommendation adopted, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018); see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998). Ronit has submitted sufficient documentation to support the associated costs and disbursements requested. (See Billing Records; Stein Decl.) Accordingly, I find $2,712.88 to be reasonable out-of-pocket expenses.

## CONCLUSION

For the reasons explained above, I respectfully recommend that Ronit's damages be computed as follows: $5,361,886 in unpaid rent, $1,214,116.76 in construction contributions, $528,907.11 in real estate taxes, $137,500 for settlement of mechanic's liens, $38,304.50 in attorney's fees, and $2,712.88 costs, for a total of $7,283,427.25. I further recommend that Ronit be awarded prejudgment interest at the rate of nine percent per annum from May 1, 2020 through the date of entry of judgment.

Ronit is directed to serve copies of this Report and Recommendation on Brooklyn Boulders by regular mail, and to file proof of service with the court within ten days of this Report and Recommendation. Any objections to this Report and Recommendation must be filed electronically, with courtesy copies to Judge Block and to my chambers, within fourteen (14)

days.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

          Respectfully submitted,

          /s/
          ROBERT M. LEVY
          United States Magistrate Judge

Dated: Brooklyn, New York
      January 9, 2023